FILED
2021 Feb-25  PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JO EVELYN JONES,                       )
                                       )
    Plaintiff,                     )
                                       )
v.                                     )     Case No. 4:20-cv-76-GMB
                                       )
ANDREW M. SAUL, Commissioner,          )
Social Security Administration,        )
                                       )
    Defendant.                     )

## MEMORANDUM OPINION

On April 7, 2017, Plaintiff Jo Evelyn Jones filed an application for a period of disability and disability insurance benefits ("DIB"). Her alleged disability onset date is January 10, 2017. Jones' application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on December 18, 2018, and he denied Jones' claims on January 15, 2019. Jones requested a review of the ALJ's decision by the Appeals Council, which declined review on November 22, 2019. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 22, 2019.

Jones' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Doc. 8.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Jones was 56 years old at the time of the ALJ's decision. R. 195.  Her primary complaints are difficulties using her right hand, migraines, back and neck problems, pain in her left shoulder, and depression. R. 79–82.  In her disability report, Jones alleged the following medical conditions: post-CMC bilateral arthroplasty, fibromyalgia, cervicalgia, sacroiliitis, chronic migraine headaches, lumbosacral spondylosis, lumbar radiculopathy, hypertension, and cervical degenerative disc disease. R. 230.

Jones completed the twelfth grade and received her high school diploma. R. 75 & 231.  She did not attend college or any trade school. R. 75.  In the past, she held a variety of employment positions.  Jones was a cashier/stocker in a retail store from June 2002 until February 2005. R. 232.  She last worked in a manufacturing

operation as a harness assembler from April 2005 until January 2017. R. 232.

At the administrative hearing, Jones testified that she stopped working in January 2017 because of cramping and pain in her right hand, which resulted in surgery. R. 79. Jones stated that the surgery made the condition worse, although she did attend physical therapy for six weeks after her surgery. R. 79 & 81. Jones also testified to having migraines which began before she stopped working and have worsened, and she contended that her prescribed medicine did not improve her migraines. R. 80 & 92. She has high blood pressure that is controlled by medication. R. 80. She testified that she has back and neck problems and had fusion surgery on her neck. R. 80. Jones has pain in both shoulders with pain radiating down her arms. R. 81. She was diagnosed with fibromyalgia, which causes pain over her entire body. R. 93. She also testified that she has some depression resulting in a lack of desire to be with her family, do anything, or get out of the house. R. 82–83.

Concerning her activities, Jones testified that she can drive a car for short distances (R. 83–84), but her husband usually drives her where she needs to go. R. 83. She drives only two or three times per month. R. 83. She is able to dress and bathe herself without assistance. R. 84. Jones does a little cooking but her husband cooks more than she does. R. 84–85. She helps with the laundry and cleaning of the house. R. 85. Jones described her typical day as follows:

> I get up and try to do a few things around the house, so whatever needs to be done, dust or whatever I see that needs to be done around the

house.  I'll sit down for a while and watch a little TV and that's about
it.

R. 88.  She can walk to the mailbox (about 25 feet from her house) without much of

a problem, and could walk a city block but would have to rest afterwards. R. 85.  She

leaves the house a few times per month for doctors' appointments. R. 89–90.  Her

daughter visits her in her home and helps her. R. 89.

Jones testified that she has no problems sitting (R. 85), but estimated that she

could not sit for a one or two-hour period without taking a break because of pain in

her neck and back. R. 87–88.  Instead, she estimated that she would need a 10 to 15-

minute break after 30 minutes of sitting. R. 87–88.  She can use her left hand to lift

items like a gallon of milk, but she experiences pain. R. 86.  She could not lift a 20-

pound bag of dog food. R. 86.  She is able to squat to pick up small items off the

floor, can go down on one knee, and can bend at the waist with difficulty. R. 86–87.

The ALJ issued his decision on January 15, 2019. R. 35.  Under step one of

the five-step evaluation process, he found that Jones has not engaged in substantial

gainful activity since January 10, 2017. R. 29.  The ALJ concluded that Jones suffers

from the severe impairments of hypertension, degenerative disc disease of the

cervical and lumbar spine, migraine headaches, and fibromyalgia. R. 29–30.  The

ALJ noted that these medically determinable impairments cause more than minimal

limitations to the ability to perform basis work activities. R. 29.  But the ALJ

concluded at step three of the analysis that none of Jones' impairments satisfied or

7

medically equaled the severity of one of those listed in the applicable regulations.
R. 31.

Before proceeding to the fourth step, the ALJ determined that Jones had the
residual functional capacity ("RFC") to perform a limited range of light work. R. 31.
More specifically, the ALJ found that Jones had the following limitations with
respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> no overhead reaching, bilaterally; occasional climbing of ramps and
> stairs; never climbing of ladders, ropes or scaffolds; frequent balancing;
> and occasional stooping, kneeling, crouching or crawling.   The
> claimant can have occasional exposure to extreme cold, extreme heat,
> humidity or vibration, but no exposure to hazards such as work at
> unprotected heights or around dangerous moving machinery.

R. 31.   At the fourth step, the ALJ considered Jones' age, education, work
experience, and RFC in determining that she was capable of performing her past
relevant work as a harness assembler. R. 34.  With this determination, the inquiry
ended because a claimant who is capable of performing past work is not disabled.
20 C.F.R. §§ 416.920(a)(4)(v) & (g)(1).

Therefore, the ALJ concluded that Jones was not disabled within the meaning
of the Social Security Act from January 10, 2017 through the date of the decision.
R. 35.  Based on these findings, the ALJ denied Jones' application. R. 35.

## IV.  DISCUSSION

Jones makes five arguments in favor of remand: (1) the Appeals Council erred
when it found that the BioImaging medical records were not chronologically

relevant; (2) the ALJ erred when he found that Jones can perform her past relevant work; (3) the ALJ's RFC finding is not supported by substantial evidence, is conclusory, and violates SSR 96-8p; (4) the ALJ erred when he found that Jones did not meet Grid Rule 201.14 or 202.06; and (5) the ALJ improperly applied the pain standard and improperly rejected Jones' testimony. Doc. 9 at 22–45. The court addresses each argument in turn. For the following reasons, the court finds that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standards to reach his conclusions.

## A.   Appeals Council

Jones first argues that the Appeals Council erred in its evaluation of the additional evidence from BioImaging that she submitted after the ALJ's decision. Doc. 9 at 22–29. The Commissioner contends that the Appeals Council properly found that the 2019 MRI from BioImaging was not chronologically relevant because it was dated after the ALJ's decision. Doc. 10 at 22–25. The court agrees with the Commissioner for the following reasons.

As a general matter, a claimant is entitled to present evidence at each stage of the administrative process. *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1308 (11th Cir. 2018). If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015); *Ingram v.*

*Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  Evidence is material if a reasonable possibility exists that the evidence would change the administrative result. *Washington*, 806 F.3d at 1321.   New evidence is chronologically relevant if it "relate[s] to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(c) & 416.1470(c).  The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted).   The Appeals Council, however, is required only "to apply the correct legal standards in performing its duties" such that it need not "give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

The additional evidence at issue here is an MRI of Jones' lumbar spine dated March 8, 2019.[2] R. 23.  In his report, the radiologist made a comparison of the March 8, 2019 MRI with an MRI from July 7, 2015. R. 23.  The radiologist's impressions were:

> 1. Degenerative disc disease at L1–L2 appears somewhat more pronounced compared to earlier exam.  Further loss of disc space height with somewhat more pronounced reactive endplate change demonstrated at this level.
> 2. Multilevel degenerative change otherwise similar to the previous

---

[2] Jones submitted other additional evidence to the Appeals Council but challenges only the denial of review based on the MRI. Doc. 9 at 22–29.

study.

R. 23.  The Appeals Council found that this additional evidence did not relate to the period at issue in that it did not affect the ALJ's decision about whether or not Jones was disabled on or before January 15, 2019. R. 2.

On its face, the MRI report reflects that it occurred almost three months after the period of disability, and there is no accompanying medical opinion that explains how these results would relate back to the time period at issue.  While the report does state that Jones' degenerative disc disease "appears somewhat more pronounced," the ALJ found her degenerative disc disease to be a severe impairment and specifically incorporated limitations in her RFC addressing the impairment. R. 29 & 31–35.  Thus, even if the MRI could be considered chronologically relevant, it would not provide a basis for reversing the Appeals Council decision because it is cumulative evidence. *See Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496, 498 (11th Cir. 2016).  Instead, the new MRI merely confirms the degenerative disc disease present in the July 2015 MRI results that were considered by the ALJ and incorporated into Jones' RFC. *See Norton v. Comm'r Soc. Sec.*, 2017 WL 9362898, at *5 (M.D. Fla. March 3, 2017) (finding MRI taken after period of disability not chronologically relevant, new, or non-cumulative).  For these reasons, Jones has failed to show how the MRI likely would impact the underlying decision. The Appeals Council did not err when it denied review despite this additional evidence.

**B.     Past Relevant Work**

Jones next argues that the ALJ inadequately developed the record as to the physical requirements of her past work. Doc. 9 at 29–34.   The Commissioner responds that the ALJ appropriately considered Jones' prior work history, including the VE's testimony as it relates to the Dictionary of Occupational Titles ("DOT"), and substantial evidence supports the ALJ's determination that Jones could perform her past relevant work. Doc. 10 at 15–20.   The court agrees with the Commissioner for the following reasons.

"The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec*., 802 F.3d 1264, 1267 (11th Cir. 2015).   Where "there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant's past work, and therefore cannot say whether the claimant remains able to perform that work given her current limitations. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).   The Eleventh Circuit has remanded for further inquiry when, for example, the record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her past work. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).

Here, the ALJ found that Jones could return to her past work as a harness assembler as that job generally is performed. R. 34–35.  And the record contains ample evidence regarding the demands of Jones' past work as a harness assembler as it is generally performed and has Jones performed it.  For example, Jones completed a "Work History Report" as part of her application. R. 202–04.  As to her former job, the form instructed Jones to answer a series of questions, including, but not limited to:

- Describe this job. What did you do all day?
- In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? (Bend down and forward at waist) Kneel? (Bend legs to rest on knees) Crouch? (Bend legs & back down & forward) Crawl? (Move on hands & knees) Handle, grab or grasp big objects? Reach? Write, type of handle small objects?
- Explain what you lifted, how far you carried it, and how often you did this.

R. 203.  The form also asked Jones to indicate the "heaviest weight lifted" and the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." R. 203.

With respect to her harness assembler position, Jones answered most of these questions, indicating, for instance, that she walked for six hours, stood for one hour, and sat for two hours per day. R. 203.  She did not indicate whether she climbed or stooped, but stated that she kneeled for four hours per day; crouched for two hours; crawled for one hour; handled, grabbed or grasped big objects for eight hours; reached for eight hours; and handled small objects for two hours. R. 203.  Jones

stated that she carried tubs of harness cables and hardware 15 to 20 feet, the heaviest item she lifted was 50 pounds, and she frequently lifted 25 pounds. R. 203.

At the hearing, the ALJ questioned Jones and the VE about Jones' past work as a harness assembler.  For example, he asked Jones about the lifting and standing requirements of her work in that position. R. 78–79.  The VE testified that Jones "worked as a harness assembler, 728.684-010, light, semi-skilled, SVP of 3, according to the DOT.[3]  As testified to, however, this job would be "light to medium, depending on activity." R. 94.  The VE and the ALJ also cited sections of the DOT to describe Jones' past relevant work. R. 34 & 94; *see* 20 C.F.R. § 404.1560(b)(2); DOT §§ 728.684-010, 1991 WL 679681 (wire harness assembler).

Recently, in a case similar to the instant one, the Eleventh Circuit concluded that "[t]he Work History Report, testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant]'s past relevant work," and found this evidence sufficient to compare the claimant's current abilities to the demands of her previous employment. *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 900 (11th Cir. 2019).  The ALJ here had access to the same types of information in making the determination that Jones could return to her past work.  The court finds that this determination is supported by substantial evidence and therefore Jones

---

[3] The DOT contains detailed descriptions of the duties and physical requirements associated with each occupation as it generally is performed in the economy.

is not entitled to any relief on this issue.[4]

## C.  RFC Formulation

Jones next argues that the ALJ's RFC finding is not supported by substantial evidence.[5] Docs. 9 at 34–37 & 11 at 8–9.  Specifically, she contends that the RFC is conclusory and violates Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. Docs. 9 at 34 & 11 at 8.  The Commissioner contends that this argument lacks merit and overlooks certain of the ALJ's findings. Doc. 10 at 11–15.  The court agrees.

SSR 96–8p regulates the ALJ's assessment of a claimant's RFC.  Under SSR 96–8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p at 1. The regulation specifically mandates a narrative discussion of "the individual's

_____

[4] Alternatively, the court finds that any purported failure by the ALJ to specifically address Jones' relevant work history is harmless and not a cause for reversal or remand for the reasons stated above.  There was ample record evidence of her past work history and the demands of the jobs. *See  Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the assigned error was harmless because it did not have an impact on the step being challenged); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

[5] The court in not persuaded by Jones' citation to *Thomason v. Barnhart*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), for the proposition that the RFC assessment is unsupported by substantial evidence because there was no opinion evidence from a physician matching the limitations in the RFC finding.  The determination of a claimant's RFC is an administrative determination left for the Commissioner and not one reserved for medical advisors. *See* 20 C.F.R. § 404.1546.

ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describ[ing] the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at 6.

The Eleventh Circuit has held that an ALJ meets the requirements of SSR 96–8p by considering all of the evidence even when the ALJ could have been "more specific and explicit" in his or her findings with respect to a plaintiff's "functional limitations and work-related abilities on a function-by-function basis." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding that an ALJ's RFC finding is sufficiently detailed despite lacking an express discussion of every function if there is substantial evidence supporting the ALJ's RFC assessment). In addition, the ALJ need not "specifically refer to every piece of evidence in his decision" as long as the decision allows the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

The court is satisfied that the ALJ complied with SSR 96-8p.[6] The decision

---

[6] Numerous opinions from this district have rejected a similar argument made by Jones' attorney. *See, e.g.*, *Turley v. Comm'r of Soc. Sec.*, 2019 WL 1466260, at *6 (N.D. Ala. Apr. 4, 2019); *Morgan v. Comm'r of Soc. Sec.*, 2019 WL 1466259, at *4 (N.D. Ala. Apr. 3, 2019); *Ragland v. Comm'r of Soc. Sec.*, 2019 WL 1125573, at *7 (N.D. Ala. Mar. 3, 2019); *Brown v. Berryhill*, 2018 WL 5024086, at *6 (N.D. Ala. Oct. 17, 2018); *Washington v. Comm'r of Soc. Sec.*, 2018 WL 1403895, at *7 (N.D. Ala. Mar. 20, 2018); *Caves v. Berryhill*, 2018 WL 888885, at *5 (N.D. Ala. Feb. 14, 2018); *Hickman v. Berryhill*, 2018 WL 582438, at *4–5 (N.D. Ala. Jan. 29, 2018).

includes a through discussion and examination of all of the evidence of Jones' impairments, including the objective medical evidence, the longitudinal treatment history, her daily activities, and testimony and other statements concerning her alleged limitations. R. 31–34. The decision also explains the basis for the ALJ's determination that Jones could perform a reduced range of light work. R. 31–34. And Jones' argument that the ALJ must rely on a physical capacities evaluation from a treating or examining physician is unavailing. The RFC determination is an issue reserved to the Commissioner, and the ALJ is not required to base his RFC finding on the opinion of a physician. *See* 20 C.F.R. §§ 404.1546(c) & 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Accordingly, the court finds this argument to be without merit.

**D.    The Grids**

After determining a claimant's RFC and ability or inability to return to past relevant work, the general rule is that the ALJ may use the Grids to determine whether other jobs exist in the national economy that the claimant can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1242–43 (11th Cir. 2004). The ALJ, however, determined that Jones was capable of performing her past relevant work, and for the reasons detailed above the court determines that substantial evidence supports that

decision.  Accordingly, the ALJ had no need to consider the Grids when making his finding that Jones could return to her past relevant work.

## E.    Pain Standard

Jones' final issue for review concerns the adequacy of the ALJ's evaluation of her pain complaints. Doc. 9 at 38–46.  Jones contends that she "had objective cases of pain and weakness including prior neck surgery, degenerative disc disease of the cervical and lumbar spine[,] migraine headache[,] and fibromyalgia." Doc. 9 at 40 (emphasis and citation omitted).  She highlights medical records from the Orthopedic Center and treatment from Dr. Michael Cinander, a chiropractor, in support of her argument. Doc. 9 at 39.  Jones also asserts that "[t]he ALJ's analysis is deficient.  The issue is not whether the objective evidence supports the allegation of pain.  The ALJ did not apply the proper pain standard." Doc. 9 at 45.

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ

must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d).   While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).   In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).   The ALJ is not required to conduct an explicit symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).   "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Jones' medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.

R. 32.  The court finds that the ALJ's determination is supported by substantial evidence.

The ALJ examined the medical evidence and Jones' testimony about her daily life activities in determining that her subjective complaints of pain were not entirely credible.  The ALJ specifically found that her complaints of disabling pain were not consistent with the following medical evidence:

- April 2017 treatment notes from Lakeside Clinic showing no acute distress and a normal physical exam despite her complaints of pain and physical therapy for her hands. R. 33 & 448–58.
- April 2017 report from her gynecological examination noting a benign physical examination with mild osteopenia on her bone density test. R. 33 & 466.
- June and July 2017 notes from Dr. Christie S. Thomas, a rheumatologist, noting normal physical examinations and no acute distress. R. 33, 774 & 786.  In August 2018, Dr. Thomas reported that Jones was trying to exercise regularly, her sleep had greatly improved, and her medicine (gabapentin) had been tremendously helpful. R. 33 & 652.  Her physical examination was normal and her neurological examination was grossly intact with independent ambulation and good strength in her major muscle groups. R. 33 & 652.
- August 2017 notes from Tennessee Valley Pain Consultants report a mostly normal physical examination with mild generalized weakness in both lower extremities, but normal range of motion and normal strength in bilateral upper extremities.  The notes also referenced her January 2017 hand surgery and observed that she was doing well on her medication and was able to perform daily living activities with less difficulty. R. 33 & 697–98.
- September 2017 treatment notes from Dr. Jitesh Kar, a neurologist, noting slight improvement, headaches approximately every couple of weeks, with pain rated 4 out of 10.  Jones reported no side effects from her medication, and she had no focal neurological deficit on examination.  Her brain MRI showed right parietal meningioma and

Dr. Kar stated that her "headaches are suggestive for classic migraine headache." R. 33 & 512–15.

Based on this medical evidence and Jones' testimony regarding her daily activities, the court finds that the ALJ's conclusion is supported by substantial evidence.  Jones' medical examination reports were largely normal, and she has never been noted to be in acute distress. *See Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints).  Jones' treatment and medication were conservative and noted as effective by her doctors.  The treatment notes reflect that Jones engaged in a somewhat normal level of daily activity.  These activities undermine her claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding ALJ properly found subjective complaint inconsistent with the record of simple daily activities).

In sum, the ALJ correctly considered "the consistency of [Jones'] statements" with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8.  The ALJ's determinations are supported by substantial evidence and this claim is without merit.

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on February 25, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE